UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LASHON WYNN,

      Plaintiff,

v.                                                            Case No.  8:20-cv-2862 -SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

      Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g).

    **I.**    **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 221-22). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 124-42, 152-54). Plaintiff then requested an administrative hearing (Tr. 162-63). Per Plaintiff's request, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared and testified (Tr. 53-106). Following the hearing, the ALJ issued an unfavorable decision

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 33-45). Subsequently, Plaintiff requested review from the Appeals Council (Tr. 15), which the Appeals Council denied (Tr. 1-4). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff was born on September 25, 1972 and claims disability beginning August 30, 2014 (Tr. 221-22). He has a college education and graduated from law school (Tr. 70-71). Plaintiff's past relevant work experience was as a high school teacher and as a contracting officer in the military (Tr. 60-63). Plaintiff initially alleged disability due to narcolepsy; sleep apnea; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); herniated discs; and degenerative joint disease (Tr. 125).

In rendering the administrative decision, the ALJ concluded that Plaintiff last met the insured status requirements on December 31, 2019 and had not engaged in substantial gainful activity during the period from his alleged onset date of August 30, 2014 through his date last insured of December 31, 2019 (Tr. 35-36). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of bilateral knees, obstructive sleep apnea and narcolepsy, generalized anxiety disorder, major depressive disorder, and PTSD (Tr. 36). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with exertional and non-exertional limitations (Tr. 38).[2] In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 39).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work but could work as an address clerk, surveillance system monitor, and inspector (Tr. 43-44). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled from August 30, 2014, through the date last insured (December 31, 2019) (Tr. 43-44).

---

[2] These limitations are: "can lift and carry, and push and pull 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, stand for 2 hours, and walk for 2 hours. [Plaintiff] is limited to occasional reaching overhead bilaterally, frequent reaching in all other directions bilaterally, and frequent handling and fingering bilaterally. The claimant is limited to occasionally climbing ramps and stairs, and ladders, ropes, and scaffolds, and occasionally stooping, kneeling, crouching, and crawling. He can occasionally work at unprotected heights, around moving, mechanical parts, operating a motor vehicle, and around vibration. The claimant is able to perform simple, routine tasks and make simple, work decisions defined as no more than reasoning level 3 in the DOT. He is able to interact occasionally with supervisors, coworkers, and the public, and can adapt to gradual changes in the work setting." (Tr. 38).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §

404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV. Analysis**

Plaintiff argues that the ALJ improperly evaluated the opinions of Plaintiff's psychologist, Dr. Vickie E.H. Nichols, and of Plaintiff's sleep medicine specialist, Ms. Sarah Richter. For the reasons that follow, the ALJ erred in evaluating the opinion evidence.

Plaintiff first argues that the ALJ improperly evaluated the opinion of Plaintiff's psychologist, Dr. Vickie E.H. Nichols and did not offer a sufficient justification for finding Dr. Nichol's opinion to be unpersuasive. Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claim on December 4, 2018 (*see* Tr. 221-22). As the SSA explained,

> under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us.

6

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-c-02379-MGL-MGB, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[3] 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

But whether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question. *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

8

WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021). District courts have diverged in their approaches. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was non-issue – under both standards, ALJ's opinion was substantially supported)[4], *with Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid), *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them), *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies), *and Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS),

---

[4] In finding the treating physician rule still applies, the *Bevis* court cited *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 918 n.4 (11th Cir. 2021) ("*Simon I*"), a June 9, 2021 decision the Eleventh Circuit withdrew on rehearing on August 12, 2021, and substituted with *Simon*, 7 F.4th 1094 (11th Cir. 2021) ("*Simon II*"), seven days after *Bevis* was decided. In a *Simon I* footnote, the Eleventh Circuit stated that the length of a claimant's treating relationship with her doctor was still an important factor to consider under the new regulations. 1 F.4th at 918 n. 4; *see also Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562 (M.D. Fla. July 12, 2021) (citing *Simon I* and emphasizing that under new regulations, length of treating relationship must still be considered). That footnote was *dicta*, however, as *Simon I* and *II* were decided under the old regulations. Interestingly, *Simon II* omits the *Simon I* footnote.

2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid).

The Eleventh Circuit has not spoken directly on the issue in a published opinion. *See Simon* II, 7 F.4th at 1104, n.4 ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). But in a recent unpublished opinion, *Marilyn Matos v. Commissioner of Social Security*, No. 21-11764, 2022 WL 97144, at * 4 (11th Cir. Jan. 10, 2022), the Eleventh Circuit found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme." *Id*. The *Matos* court stated that the new regulations "no longer require[ ] the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Id*.

Here, the Court finds that the ALJ was not required to demonstrate good cause to find Plaintiff's treating source opinions unpersuasive. Instead, the ALJ, in accordance with 20 C.F.R. § 404.1520c(c), must consider the persuasiveness of Plaintiff's medical opinions and evaluate them primarily based on supportability and consistency.

Dr. Nichols provided counseling to Plaintiff over a period of at least ten years, from 2010 through 2019 (Tr. 1040, 1044, 1048, 1052, 1056, 1060, 1064, 1068). The record includes Dr. Nichols' reports, which include progress reports, mental status exam findings, assessments, recommendations, and diagnoses (*See id.*). Throughout Plaintiff's

treatment course with Dr. Nichols, Plaintiff experienced sleep disturbances, irritability, poor concentration, increased stress levels, and vacillating moods "from cooperative, to agitated, to depressed," which were "normally based on what has transpired during the week." (*Id.*). Dr. Nichols' recommendations generally remain consistent and include recommended follow up appointments with Plaintiff's primary care physician and continued weekly therapy sessions (Tr. 1042, 1046, 1050, 1054, 1058, 1062, 1066). Plaintiff's diagnoses consistently include major depression, occupational problems, relational problems, sleep apnea, and narcolepsy (Tr. 1050, 1054, 1058, 1062, 1066). Based on Dr. Nichols' longitudinal treatment with Plaintiff, Dr. Nichols made the following observations in a 2019 progress report: "[Plaintiff] does not work effectively under normal stress, due to his health problems; therefore, he cannot tolerate the pressure of workplace demands. Because of the cumulative impact of his diagnoses, it presents very significant obstacle to his sufficiency and productivity." (Tr. 1042).

     In his decision, the ALJ stated the following related to Dr. Nichols:

> The undersigned finds the claimant's treatment provider, Dr. Vickie Nichols, unpersuasive. Her findings are not consistent with the record including the claimant's completion of professional school that involves a considerable amount of stress. It is also not consistent with the VA records[5] that indicate that the claimant's mental impairments do not impact him vocationally.

(Tr. 42). Beyond these three brief sentences, the ALJ only indirectly references Plaintiff's treatment with Dr. Nichols two additional times in the decision, noting that "February 2017 counseling records note that the claimant had some issues with excessive worry

---

[5] Of note, the ALJ then goes on to find that the VA disability rate is also not persuasive (Tr. 42).

11

related to law school" and that "April 2020 therapy records show the claimant still had issues with interpersonal relationships, and he exhibited paranoid behavior with the coronavirus pandemic exacerbating his fears. At that time, he had a GAF of 50." (Tr. 41).

The ALJ is correct in his assertion that Plaintiff completed law school. The record, however, contains ample notes related to Plaintiff's significant struggles related to school, despite the accommodations offered for Plaintiff. In fact, many of these notes are within Dr. Nichol's own reports. Over the course of treatment with Dr. Nichols, Plaintiff routinely discusses his issues with concentration, memory, anger, and excessive fatigue during his law school career (Tr. 1044, 1048, 1052, 1056). Yet despite the frequency, over a period of years, at which Dr. Nichols discusses these issues in her reports, there is nothing in the ALJ's analysis that explains how the ALJ considered supportability.[6] *See Mayfield v. Comm'r of Soc. Sec.*, No. 7:20-cv-1040-ACA, 2021 WL 5300925, at *5-6 (N.D. Ala. Nov. 15, 2021) (reversing Commissioner's decision for failing to identify a "real inconsistency" or explain supportability analysis). Moreover, while the ALJ briefly cites Plaintiff's treatment records with Dr. Nichols in the decision, the ALJ fails to include a substantive discussion related to the consistency of Dr. Nichols' opinion. Ultimately, the ALJ's brief review of Dr. Nichols' treatment falls short. "[T]he new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous." *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-CV-1515-RBD-DCI, 2020 WL

---

[6] In fact, the ALJ does not use the term "supportability" anywhere in his decision. While the undersigned is not suggesting that an ALJ must use each term explicitly, the ALJ's explanation for rejecting Dr. Nichol's opinions offers no insight into how he considered this factor.

1957597 at *6 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020); *see also* 20 C.F.R. § 404.1520c(b)(2).

In sum, because the ALJ failed to adequately address the supportability and consistency factors in evaluating the opinion of Dr. Nichols, the Court finds that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ should explain his consideration of the persuasiveness of Dr. Nichols' opinions, focusing on the factors of supportability and consistency.[7]

### V. Conclusion

Accordingly, for the foregoing reasons, it is hereby **ORDERED**:

1. The decision of the Commissioner be reversed, and the case remanded to the Commissioner for further consideration in accordance with this opinion.

2. The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on April 14, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff also briefly argues the ALJ erred in considering the opinion of Plaintiff's sleep medicine specialist, Ms. Richter. The Commissioner contends that the ALJ was not required to defer to Ms. Richter's opinion because the ALJ's decision "finding this opinion unpersuasive was supported by substantial evidence" and Ms. Richter's "opinion was also inconsistent with Plaintiff's activities." (Doc. 17 at 29-30). The undersigned does not reach this issue but notes that, on remand, the ALJ should evaluate all treating opinions with 20 U.S.C. § 404.1520c's mandates in mind.